## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

```
------------------------------ x
LAUREN E. MARSTELLER, AND ALL    :
OTHERS SIMILARLY SITUATED,       :
                                 :
         Plaintiff,              :
                                 :
v.                               :  Civil No. 3:14-CV-1371(AWT)
                                 :
BUTTERFIELD 8 STAMFORD LLC,      :
BUTTERFIELD 8 WP LLC, PUBLIC     :
HOUSE INVESTMENTS LLC, LOLAS     :
STAMFORD LLC, JOHN GAZZOLA,      :
RALPH BATTISTA, JR., DOUGLAS     :
NEWHOOK, AND RYAN SLAVIN,        :
                                 :
         Defendants.             :
------------------------------ X
```

## RULING ON MOTION FOR SUMMARY JUDGMENT

The plaintiff, Lauren E. Marsteller ("Marsteller"), brings this action against Butterfield 8 Stamford ("BU 8 Stamford"), Butterfield 8 WP LLC ("BU 8 WP"), Public House Investments LLC ("PHI"), Lolas Stamford LLC ("Lolas Stamford"), John Gazzola ("Gazzola"), Ralph Battista, Jr. ("Battista"), Douglas Newhook ("Newhook"), and Ryan Slavin ("Slavin"), asserting claims for a hostile work environment, for sexual harassment and for retaliation, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and Conn. Gen. Stat. §§ 31-290 and 46a-60 et seq.. She also brings claims for unpaid overtime pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 et seq., and Conn. Gen.

Stat. §§ 31-60(a) and 31-76(b), for intentional infliction of emotional distress, and for unreasonable intrusion on the seclusion of another.  Defendants BU 8 WP, PHI and Battista have moved for summary judgment as to all claims in the plaintiff's First Amended Complaint against them.  For the reasons set forth below, the defendants' motion for summary judgment is being granted as to BU 8 WP and Battista and denied as to PHI.

## I.  FACTUAL BACKGROUND

Plaintiff Lauren E. Marsteller was at the time of the events relevant to this action employed by BU 8 Stamford.  The plaintiff contends that she was hired by BU 8 Stamford but worked for both BU 8 Stamford and Lolas Stamford.  Her business card had on it the names of both restaurants.  Many employees worked for both BU 8 Stamford and Lolas Stamford.

In or about May 2012, the plaintiff started to work for BU 8 Stamford and Lolas Stamford.  Gazzola hired the plaintiff, and Newhook met with the plaintiff and Gazzola at the time she was hired.  The plaintiff's direct supervisors were Newhook, the general manager of BU 8 Stamford and Lolas Stamford, and Slavin, the assistant manager of BU 8 Stamford.  Newhook had the primary day-to-day control over the plaintiff's work schedule.  Newhook and Gazzola communicated her normal start and end times.  On or about October 20, 2012, the plaintiff's employment was summarily terminated by Newhook.

BU 8 WP did not open for business until after the plaintiff's employment with BU 8 Stamford and Lolas Stamford was terminated.  Gazzola testified that BU 8 WP was not operating until the end of 2012 even though the LLC was formed prior to that.  Battista, the general manager of BU 8 WP, testified that BU 8 WP was opened in September 2013.  The plaintiff stated that she believes that during her employment she sent the credit card batch to BU 8 WP, but she was not sure.  The plaintiff was never directly employed by BU 8 WP.

Battista might have met the plaintiff one time in passing while the plaintiff was employed at BU 8 Stamford.  Battista did not hire or fire the plaintiff.

The defendants contend that BU8 WP, BU8 Stamford and Lolas Stamford each maintain a separate corporate identity.  Gazzola testified that he is the sole owner of BU 8 Stamford and Lolas Stamford and provided relevant tax forms.  PHI was listed as the applicant and apparent owner of the trademark logo "Lola's Mexican Kitchen," under which Lolas Stamford operated its business.  Pl.'s R. 56(a)2 Statement, Ex. A ("Doc. No. 67-1") at 104-05 of 133.  The plaintiff was provided with a PHI domain e-mail account.  During the relevant time period, employees at the manager level at BU 8 WP, BU 8 Stamford and Lolas Stamford would have been provided with PHI domain e-mail accounts.  The plaintiff testified that she had seen several owners of BU 8

Stamford gather frequently and checks would be handed out to the individual owners.

The only employee handbook produced by the defendants set forth the policies and practices of Butterfield 8 WP & Lola's Mexican Kitchen, LLC for the year 2013.  But the handbook also applied to BU 8 Stamford.  Newhook testified that the handbook would be "updated with a new year each year."  Pl.'s R. 56(a)2 Statement, Ex. C (Doc. No. 67-3) at 13 of 21, ll. 6-7.  Slavin testified that the handbook for 2012 did not include BU 8 WP.

The defendants contend that Brian Harrington is the sole member and sole owner of PHI and that Gazzola had no ownership interest in PHI.  Gazzola received $5,000 weekly from PHI.  Gazzola testified that it was "paid through a management fee from [his] individual source and processed through payroll for purposes of health benefits."  Doc. No. 67-1 at 62 of 133, ll. 17-20.  According to Gazzola's LinkedIn profile on May 8, 2014, Gazzola had been a principal of PHI for a period of 8 years and 9 months.  Gazzola contends that the information was not accurate and that he is not a member of PHI.  Gazzola admits that he was aware of some publications that had characterized him as an owner of PHI, and that he did not take steps to correct them.

Battista was the executive chef of BU 8 Stamford when it was opened in May of 2009.  He became the general manager of BU

8 Stamford in January of 2010.  Battista worked for PHI in 2012
while he was a general manager of BU 8 Stamford.  He left BU 8
Stamford in January 2012 and started working at Mulberry Street,
another of Gazzola's restaurants for which PHI provided
management support.  During his time at Mulberry Street,
Battista worked for PHI and not Mulberry Street.  Battista
received checks from PHI.  Gazzola was Battista's boss and had
the authority to award him performance bonuses, and Battista did
not know who Gazzola worked for.  Battista testified that both
Harrington from PHI and Gazzola were his bosses, and had the
authority to hire and fire him.  Battista was transferred by
Gazzola from Mulberry Street to BU 8 WP in September 2013.
Battista testified that he was employed by PHI while serving as
the general manager of BU 8 WP.  According to Battista, there
were employees of PHI who worked at multiple locations,
including himself and Newhook.  Newhook worked as the manager of
BU 8 Stamford in 2009, and was transferred to Butterfield 8 New
York City in 2010.  He then moved back to Lolas Stamford at the
end of 2010.  He served as general manager for both BU 8
Stamford and Lolas Stamford from 2011 to 2013.  Newhook
testified that he had been working with Gazzola since 2008.

    The defendants contend that "PHI was formed to provide
administrative and promotional advice to restaurants and to
create a corporate entity which could obtain cost-effective

group health insurance and other benefits to the owners of
restaurants it serves" and PHI also provides accounting and
payroll services to BU 8 WP, BU 8 Stamford and Lolas Stamford.
Defs.' Mem Supp. of Summ. J. (Doc. No. 59) at 7.  The defendants
further state that "PHI's function with respect to these
defendants is purely ministerial."  Id.

The plaintiff disputes that the function of PHI is purely
ministerial.  Battista testified that PHI was a management
company of the restaurants and provided additional support
including "payroll, cost control [and] help scheduling."  Pl.'s
R. 56(a)2 Statement, Ex. B (Doc. No. 67-2) at 13 of 28, ll. 2-3.
As a manager, Battista "would enter the payroll into the system
taking the information from the point of sale and entering it
into the payroll to make sure it was accurate."  Id. at ll. 18-
22.  Battista also testified that "payroll encompasses a lot of
things.  It encompasses entering payroll into the system, and
payroll also covers scheduling of employees and things like
that."  Id. at 18-19 of 28, ll. 24-4.  In Battista's LinkedIn
profile on May 8, 2014, Battista held himself out as having been
the regional manager of PHI from June 2011 to June 2013, and
stated that he hired and trained "management teams of each
concept," managed all preopening activities and maintained
quality controls.  Pl.'s R. 56(a)2 Statement, Ex. H (Doc. No.
67-8) at 2 of 3.  The restaurants under his supervision included

BU 8 WP, Mulberry Street and Lola's Mexican Kitchen White Plains.

Newhook testified that he, Gazzola and Battista received human resources training together at a "summit" in Philadelphia including training on hiring and termination, in either late 2012 or early 2013.  On PHI's LinkedIn business profile, PHI indicated that it changed its name to Table 95 Hospitality, but PHI's name remained "Public House Investments, LLC" as of December 28, 2016.

## II.  LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(a).  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994).  When ruling on a motion for summary judgment, the court may not try issues of fact, but must leave those issues to the jury.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987).  Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined . . . to

issue-finding; it does not extend to issue-resolution." <u>Gallo</u>, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." <u>Id.</u> Only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted. Immaterial or minor facts will not prevent summary judgment. <u>See</u> <u>Howard v. Gleason Corp.</u>, 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "'assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in [the non-movant's] favor.'" <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 41 (2d Cir. 2000) (quoting <u>Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.</u>, 902 F.2d 174, 177 (2d Cir. 1990)). However, the inferences drawn in favor of the nonmovant must be supported by evidence. "'[M]ere speculation and

conjecture'" is insufficient to defeat a motion for summary judgment.  Stern v. Trustees of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (quoting Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d. Cir. 1990)).  Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant.  Anderson, 477 U.S. at 252.

## III. DISCUSSION

The defendants move for summary judgment on the grounds that there is no genuine issue that Battista, BU 8 WP and PHI neither were joint employers of the plaintiff, nor part of a single integrated enterprise that employed her.

### A. Single Integrated Enterprise Theory

"A single employer situation exists where two nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a single employer."  Clinton's Ditch Co-op Co. v. N.L.R.B., 778 F.2d 132, 137 (2d Cir. 1985) (quoting N.L.R.B. v. Browning-Ferris Indus. of Pennsylvania, Inc., 691 F.2d 1117, 1122 (3d Cir. 1982)) (internal quotation marks omitted).  The single employer doctrine applies in the civil rights context.  See Murray v. Miner, 74 F.3d 402, 404 (2d Cir. 1996).  "[F]our factors determine whether two entities will be regarded as a

single employer subject to joint liability for employment-related acts.  They are: (1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership." Id. (citing Radio & Television Broad. Technicians Local Union 1264 v. Broad. Serv. of Mobile, 380 U.S. 255, 256 (1965)).  Courts have applied the four-factor test for FLSA purposes.  See Yap v. Mooncake Foods, Inc., 146 F. Supp. 3d 552, 558 (S.D.N.Y. 2015); Juarez v. 449 Rest., Inc., 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014); Perez v. Westchester Foreign Autos, Inc., No. 11 CIV. 6091 (ER), 2013 WL 749497, at *7 (S.D.N.Y. Feb. 28, 2013); Addison v. Reitman Blacktop, Inc., 283 F.R.D. 74, 84 (E.D.N.Y. 2011).

   "To demonstrate single employer status, not every factor need be present, and no particular factor is controlling." Lihli Fashions Corp. v. N.L.R.B., 80 F.3d 743, 747 (2d Cir. 1996), as amended (May 9, 1996) (citations omitted). "[S]ingle employer status depends on all the circumstances of the case and is characterized by absence of an arm's length relationship found among unintegrated companies." Id. (citation and quotation marks omitted).  The Second Circuit prioritizes the second factor, the centralized control of labor relations. See Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1241 (2d Cir. 1995).  See also Herman v. Blockbuster Entm't Grp., 18 F. Supp. 2d 304 (S.D.N.Y. 1998), aff'd, 182 F.3d 899 (2d Cir. 1999)

("In assessing these factors in Title VII actions, courts should focus their analysis on the second factor: centralized control of labor relations."); <u>United Union of Roofers, Waterproofers, & Allied Workers Local No. 210, AFL-CIO v. A.W. Farrell & Son, Inc.</u>, 547 F. App'x 17, 19 (2d Cir. 2013) ("While no single factor is dispositive, we have identified control of labor relations as central.") (citations and internal quotation marks omitted).

### 1. <u>The Interrelation of Operations</u>

Several factors are considered by courts:

(1) whether the parent was involved directly in the subsidiary's daily decisions relating to production, distribution, marketing, and advertising; (2) whether the two entities shared employees, services, records, and equipment; (3) whether the entities commingled bank accounts, accounts receivable, inventories, and credit lines; (4) whether the parent maintained the subsidiary's books; (5) whether the parent issued the subsidiary's paychecks; and (6) whether the parent prepared and filed the subsidiary's tax returns.

<u>Herman v. Blockbuster Entm't Grp.</u>, 18 F. Supp. 2d at 309.

For interrelation of operations, "courts look to factors such as common offices, long distance shipping, bank accounts, payroll, and shared facilities rather than to an overlap of personnel as an indicia of integration." <u>Dewey v. PTT Telecom Netherlands, U.S., Inc.</u>, No. 94 Civ. 5983 (HB), 1995 WL 425005, at *3 (S.D.N.Y. July 19, 1995), <u>supplemented on other matters sub nom.</u> <u>Dewey v. PTT Telecom Netherlands, US, Inc.</u>, No. Civ. A.

94 Civ. .5983 (HB), 1995 WL 542447 (S.D.N.Y. Sept. 12, 1995),
and both aff'd 101 F.3d 1392 (2d Cir.1996).

### 2. Centralized Control of Labor Relations

Centralized control over labor relations, the most
important factor in the single-employer inquiry, includes such
factors as to whether the companies have separate human
resources departments and whether the entity "establishes its
own policies and makes its own decisions as to the hiring,
discipline, and termination of its employees." Laurin v. Pokoik,
No. 02 CIV. 1938 (LMM), 2004 WL 513999, at *6 (S.D.N.Y. Mar. 15,
2004) (quoting Duffy v. Drake Beam Morin, No. 96 CIV. 5606
(MBM), 1998 WL 252063, at *4 (S.D.N.Y. May 19, 1998)).  "To
satisfy the single-employer test, a plaintiff need not allege
that the parent" company "exercises 'total control or ultimate
authority over hiring decisions,' so long as he alleges that
there is 'an amount of participation [by the parent] that is
sufficient and necessary to the total employment
process.'" Brown v. Daikin Am. Inc., 756 F.3d 219, 227 (2d Cir.
2014) (quoting Cook, 69 F.3d at 1241) (addition in original).
The central question is "[w]hat entity made the final decisions
regarding employment matters related to the person claiming
discrimination?"  Cook, 69 F.3d at 1240 (citations and internal
quotation marks omitted).

### 3. **Common Management**

Courts consider evidence of common management "'in the light of the well established principle that directors and officers holding positions with a parent and its subsidiary can and do change hats to represent the two corporations separately, despite their common ownership.'" Herman v. Blockbuster Entm't Grp., 18 F. Supp. 2d at 312 (quoting Lusk, 129 F.3d at 779). Common management "may be evidenced by an overlap in officers or members who sit on the board of directors." Peltier v. Apple Health Care, Inc., 130 F. Supp. 2d 285, 288 (D. Conn. 2000) (citing Owens v. Am. Nat'l Red Cross, 673 F. Supp. 1156, 1161 (D. Conn. 1987)).

### 4. **Common Ownership**

"[A] determination of the fourth factor, common ownership, may be influenced by a finding of absolute authority over financial matters, including budgeting and payment of employees." Peltier, 130 F. Supp. 2d at 289 (citing Owens, 673 F. Supp. at 1161).

### B. **Joint-Employer Relationship**

"A conclusion that employers are 'joint' assumes that they are separate legal entities, but that they have merely chosen to handle certain aspects of their employer-employee relationships jointly." Clinton's Ditch Co-op Co., 778 F.2d at 137 (quoting Browning-Ferris Indus., 691 F.2d at 1122). The test for joint

employment relationship may vary for different purposes.

### 1. Joint Employment Relationship for FLSA purposes

"The Supreme Court has emphasized the 'expansiveness' of the FLSA's definition of employer." Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999) holding modified by Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61 (2d Cir. 2003) (quoting Falk v. Brennan, 414 U.S. 190, 195 (1973)).  The relevant factors for joint employment are listed in 29 C.F.R. § 791.2(b): "(1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer."  29 C.F.R. § 791.2(b).

Due to the breadth of this definition, the Second Circuit adopted the "economic reality" test for FLSA purposes: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Herman v.

RSR Sec. Servs. Ltd., 172 F.3d at 139 (citations and internal quotation marks omitted).

No one factor alone is dispositive.  See Herman v. RSR Sec. Servs. Ltd., 172 F.3d at 139 (citing Brock v. Superior Care, Inc., 840 F.2d 1054, 1059 (2d Cir. 1988)).  The "'economic reality is determined based upon *all* the circumstances, [and] any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition.'"  Zheng, 355 F.3d at 71 (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d at 139 (emphasis in original)).  In Herman, the Second Circuit "expressly denied . . . that the four factors borrowed from the Ninth Circuit in *Carter* are the exclusive touchstone of the joint employment inquiry under the FLSA."  Zheng, 355 F.3d at 71.  Thus, "in certain circumstances, an entity can be a joint employer under the FLSA even when it does not hire and fire its joint employees, directly dictate their hours, or pay them." Zheng, 355 F.3d at 70 (citing Rutherford Food Corp. v. McComb, 331 U.S. 722 (1947).

"The FLSA defines an 'employer' more broadly than the common law to include 'any person acting directly or indirectly in the interest of an employer in relation to an employee.'"  Murphy v. Heartshare Human Servs. of N.Y., No. 17-CV-1033, 2017 WL 2378024, at *3 (E.D.N.Y. June 1, 2017) (quoting 29 U.S.C.

§ 203(d)).  "The 'striking breadth' of the FLSA's definition of 'employ' stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles."  Murphy, 2017 WL 2378024, at *3 (quoting Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326 (1992)).  In Brock v. Superior Care, Inc., 840 F.2d at 1060, the court found that infrequent supervisory visits were sufficient to indicate requisite level of control for purposes of FLSA.  See Barfield v. N.Y. City Health & Hosps. Corp., 537 F.3d 132, 147 (2d Cir. 2008).

In Murphy, the court distinguished between vertical joint employment and horizontal joint employment.  See 2017 WL 2378024, at *4-*7.  "'[T]he vertical joint employment analysis . . . examines the *economic realities* of the relationships . . . to determine whether the employees are economically dependent on those potential joint employers and are thus their [joint] employees.'"  Murphy, 2017 WL 2378024, at *4 (quoting Opinion Letter from U.S. Dep't of Labor, Wage & Hour Div., 2016 WL 284582 ("2016 DoL Opinion"), at *4 (Jan. 20, 2016)) (emphasis and omissions in original).  Examples of vertical joint employment include: "[N]urses placed at a hospital by staffing agencies", 2016 DoL Opinion, at *8 (citing Barfield, 537 F.3d 143-49); and "garment workers who are directly employed by a contractor who contracted with the

garment manufacturer to perform a specific function", 2016 DoL Opinion, at *8 (citing Zheng, 355 F.3d 71-72).

"Horizontal joint employment may exist when 'two (or more) employers each separately employ an employee and are sufficiently associated with or related to each other with respect to the employee.'" Murphy, 2017 WL 2378024, at *5 (quoting 2016 DoL Opinion, at *4 (citing 29 C.F.R. § 791.2)). Therefore, "'*the focus of a horizontal joint employment analysis is the relationship between the two (or more) employers*.'" Murphy, 2017 WL 2378024 at *5 (quoting 2016 DoL Opinion, at *4 (citing 29 C.F.R. § 791.2))(emphasis in original).  One example of horizontal joint employment is: "where a waitress works for two separate restaurants that are operated by the same entity and the question is whether the two restaurants are sufficiently associated with respect to the waitress such that they jointly employ the waitress . . . ." Murphy, 2017 WL 2378024, at *5 (quoting 2016 DoL Opinion, at *5).

> The DoL has determined that answers to the following questions may be useful in assessing the degree of association between potential horizontal joint employers:
>
> - who owns the potential joint employers (i.e., does one employer own part or all of the other or do they have any common owners);
> - do the potential joint employers have any overlapping officers, directors, executives, or managers;
> - do the potential joint employers share control over operations (e.g., hiring, firing, payroll, advertising, overhead costs);

- are the potential joint employers' operations intermingled (for example, is there one administrative operation for both employers, or does the same person schedule and pay the employees regardless of which employer they work for);

- does one potential joint employer supervise the work of the other;

- do the potential joint employers share supervisory authority for the employee;

- do the potential joint employers treat the employees as a pool of employees available to both of them;

- do the potential joint employers share clients or customers; and

- are there any agreements between the potential joint employers.

Murphy, 2017 WL 2378024, at *6-*7 (quoting 2016 DoL Opinion at *6-*7).

### 2. Joint Employment Relationship for Title VII Purposes

When the joint employer doctrine is applicable, "'an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability for violation of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer.'" St. Jean v. Orient-Express Hotels Inc., 963 F. Supp. 2d 301, 307 (S.D.N.Y. 2013) (quoting Arculeo v. On-Site Sales & Mktg., LLC, 425 F.3d 193, 198 (2d Cir. 2005)).

The Second Circuit has "'not yet fully analyzed or described a test for what constitutes joint employment in the context of Title VII . . . The indicia suggesting a conclusion of joint employment may vary depending on the purpose of the inquiry.'" St. Jean, 963 F. Supp. 2d at 307 (quoting Arculeo, 425 F.3d at 199 n.7).  "Other courts have found a joint employer relationship in the discrimination context where 'there is sufficient evidence that the defendant had immediate control over the formal employer's employees.'" St. Jean, 963 F. Supp. 2d at 307-08 (quoting Dupree v. Urban Homesteading Assistance Bd. Sterling St. Hous. Dev. Fund Corp., No. 10 Civ. 1894(JG)(JO), 2011 WL 1343163, at *6 (E.D.N.Y. Apr. 8, 2011)).  "Relevant factors may include commonality of hiring, firing, discipline, pay, insurance, records, and supervision." St. Jean, 963 F. Supp. 2d at 308 (quoting Dupree, 2011 WL 1343163, at *6).

## C. **BU 8 WP**

"[T]he single employer doctrine does not apply in the absence of an employer-employee relationship at the time of the alleged wrong." Murray, 74 F.3d at 403.  "[T]he two entities must constitute a single employer at the time the unlawful act was committed." Id. at 405.

Gazzola testified that BU 8 WP did not open for business until the end of 2012 and Battista testified that BU 8 WP opened

in September 2013, and both dates are after the date the plaintiff's employment was terminated.  The mere belief of the plaintiff, about which she can not be sure, that she sent credit card sale batches to BU 8 WP while employed by BU 8 Stamford is insufficient to create a genuine issue of material fact. Viewing the evidence in a light most favorable to the non-moving party, no reasonable jury would find the evidence sufficient to create a genuine issue of material fact as to when BU 8 WP opened for business.

Thus, although there might well be a genuine issue as to whether BU 8 WP was part of the single integrated enterprise or a joint employer once it started operating, there is no genuine issue as to the fact that BU 8 WP did not participate in the hiring or firing decisions or exercise control over the plaintiff, because it was not open for business during the time the plaintiff was employed by BU 8 Stamford.

Therefore, the motion for summary judgment as to BU 8 WP is being granted.

### D. **Battista**

The plaintiff alleges that Battista was "a partner and employee of BUTTERFIELD 8 STAMFORD LLC and as such, owns, directs, or controls BUTTERFIELD 8 STAMFORD LLC."  First Am. Compl., Doc. No. 7, at ¶ 13.  The plaintiff also alleges that the "[d]efendants each had substantial control over Plaintiff's

working conditions, and over the unlawful policies and practices alleged herein." Id. at ¶ 3.  The plaintiff has not produced any evidence that supports her allegations as to Battista. Battista worked as the general manager of BU 8 Stamford, but left to work for Mulberry Street in January 2012.  He worked there until he left in September 2013 to work for BU 8 WP in September 2013.  Also, he had no interaction with the plaintiff in any meaningful way.  The plaintiff conceded that she and Battista "did not have significant day-to-day interaction during the period of her employment".  Pl.'s R. 56(a)2 Statement (Doc. No. 67) ¶ 6 at 3.  The plaintiff also conceded that "Battista had no known involvement with the termination of her employment".  Id. at ¶ 7.  Thus, the plaintiff has failed to create a genuine issue of material fact with respect to each theory under which Battista could be found to be liable.

Therefore, motion for summary judgment as to Battista is being granted.

### E. PHI

The court finds that genuine issues of material fact exist as to whether PHI and the plaintiff's direct employer constituted a single employer, specifically, with respect to each of the non-exclusive four factors: interrelation of operations, centralized control of labor relations, common management, and common ownership.  The court also finds that

genuine issues of material fact exist as to whether PHI and the plaintiff's direct employer were joint employers.

Therefore, the motion for summary judgment as to PHI is being denied.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (Doc. No. 57) is hereby GRANTED in part and DENIED in part.

The Clerk shall enter judgment as to defendants Butterfield 8 WP LLC and Ralph Battista, Jr. with respect to all claims against them.

It is so ordered.

Signed this 27th day of September 2017, at Hartford, Connecticut.

_____
/s/AWT
Alvin W. Thompson
United States District Judge
